CUAUHTEMOC ORTEGA (Bar No. 257443)
Interim Federal Public Defender
RAMANUJAN NADADUR (Bar No. 315718)
(E-Mail: Anuj_Nadadur@fd.org)
Research and Writing Attorney
321 East 2nd Street
Los Angeles, California 90012-4202
Telephone: (213) 894-2911
Facsimile: (213) 894-0081

Attorneys for Defendant
DYLON ROBERT HERNANDEZ

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### EASTERN DIVISON

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>    v.<br><br>DYLON ROBERT HERNANDEZ<br><br>    Defendant. | Case No. 5:13-cr-00122-VAP-1<br><br>**NOTICE OF MOTION AND MOTION; MOTION FOR COMPASSIONATE RELEASE UNDER 18 U.S.C. § 3582(c)(1)(A); DECLARATON OF COUNSEL; EXHIBITS**<br><br>**Hearing Date:** August 17, 2020<br>**Hearing Time:** 9:00 a.m. |

Defendant Dylon Robert Hernandez, by and through his attorney of record Research and Writing Attorney Ramanujan D. Nadadur, hereby files this motion for compassionate release under 18 U.S.C. § 3582(c)(1).

This brief is based on the attached motion of points and authorities, the attached exhibits, and all the records in this case.

Respectfully submitted,

CUAUHTEMOC ORTEGA
Interim Federal Public Defender

DATED: July 24, 2020     By: */s/ Ramanujan D. Nadadur*
RAMANUJAN NADADUR
Research and Writing Attorney

Office of the Federal Public Defender

## TABLE OF CONTENTS

Page

Memorandum of Points and Authorities ...................................................................... 1

I. Introduction ............................................................................................................... 1

II. Factual background .................................................................................................. 1

    A.    Procedural History .............................................................................. 1

    B.    Mr. Hernandez's Health ..................................................................... 2

    C.    The COVID-19 Pandemic ................................................................. 2

III. Argument ................................................................................................................ 3

    A.    Mr. Hernandez's Health Conditions Are "Extraordinary and Compelling Circumstance(s)" In the Context of the COVID-19 Pandemic. ........................................................................................... 4

    B.    Mr. Hernandez's Release Does Not Pose a Danger to the Community ...... 8

    C.    Mr. Hernandez Has Exhausted His Administrative Remedies. ................... 9

IV. Conclusion .............................................................................................................. 9

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*United States. v. Beck*,
   425 F. Supp. 3d. 573 (M.D.N.C. 2019) ................................................................ 4

*United States v. Blystone*,
   SA-14-CR-00172-DAE (S.D. Tex. 2020) ............................................................ 6

*United States v. Burrill*,
   No. 3:17-cr-00491-RS-1 ....................................................................................... 2

*United States v. Cantu*,
   2019 WL 2498923 (S.D. Tex. Jun. 17, 2019) ..................................................... 4

*United States v. Moore*,
   No. ED-FR-15-000555-VAP (C.D. Cal. July 16, 2020) .................................... 5

*United States v. Parker*,
   Case No. 2:98-cr-00749-CAS-1 (C.D. Cal. May 21, 2020) ............................... 9

*United States v. Rodriguez*,
   2020 WL 1627331 (E.D. Pa. Apr. 1, 2020) ......................................................... 2

*United States v. Sawicz*,
   Case No. 08-cr-287 ............................................................................................... 6

*United States v. Scparta*,
   --- F. Supp. 3d --- (S.D.N.Y. Apr. 20, 2020) ..................................................... 7

*United States. v. Ullings*,
   2020 WL 2394096 (N.D. Georgia 2020) ............................................................. 6

*United States v. Wade*,
   No. 2:99-cr-00257-CAS, Dkt. No. 633 (C.D. Cal. Apr. 13, 2020) .................. 4

*United States v. White*,
   2:13-cr-20653-MFL-MAR (E.D. Mich. 2020) .................................................... 6

*Wilson v. Williams*,
   --- F.Supp.3d --- (N.D. Ohio Apr. 20, 2020) ..................................................... 7

## TABLE OF AUTHORITIES

**Page(s)**

**State Cases**

*Hallinan v. Scarantino*,
 No. 20-hc-2088-FL (E.D.N.C. May 26, 2020), ECF No. 1-18 ................................... 7

**Federal Statutes**

18 U.S.C. 3582(c) ..............................................................................................*passim*

18 U.S.C. § 2(b) ............................................................................................................ 1

18 U.S.C. § 3142(g) ..................................................................................................... 8

18 U.S.C. § 3553(a) ..........................................................................................*passim*

21 U.S.C. § 841 ............................................................................................................ 1

First Step Act of 2018, P.L. 115-391, 132 Stat. 5194 (Dec. 21, 2018) ................ 1, 3, 7, 9

U.S.S.G. § 1B1.13 ..................................................................................................... 3, 8

**Other Authorities**

AFGE, *A BOP Officer Contracted Coronavirus. He was Told to Return to
 Work ASAP* (May 4, 2020) ......................................................................................... 7

American Diabetes Association, *COVID-19 Faq,* .......................................................... 5

American Heart Association, *Why High Blood Pressure is a "Silent
 Killer"* ........................................................................................................................ 4

American Obesity Treatment Association, *Obesity Basics* .......................................... 5, 6

Center for Disease Control and Prevention, *Defining Adult Overweight
 and Obesity* ................................................................................................................ 7

Center for Disease Control and Prevention, *People of Any Age with
 Underlying Medical Conditions* .................................................................................. 5

Center for Disease Control and Prevention, *People Who Are at Higher
 Risk for Severe Illness* ................................................................................................. 5

Center for Disease Control and Prevention, *What is Diabetes?* ..................................... 4

Federal Bureau of Prisons, *COVID-19* ...................................................................... 2, 7

# TABLE OF AUTHORITIES

**Page(s)**

**Other Authorities (continued)**

Federal Bureau of Prisons, *Inmate Locator* ................................................................... 1

Human Rights Watch, *The Answer Is No: Too Little Compassionate Release in U.S. Federal Prisons* (2012) ................................................................... 3

Lighter, J. *et al. Obesity in patients younger than 60 years is a risk factor for Covid-19 hospital admission*, Clin. Infect. Dis ....................................................... 6

Luke Barr, *Over 5,000 Corrections Officers Have Contracted COVID-19*, ABC News (May 5, 2020) ................................................................................. 7

Michael Balsamo, *Over 70% of Tested Inmates in Federal Prisons have COVID-19*, AP News (Apr. 29, 2020) ................................................................. 7

New York Times, *Coronavirus in the U.S.: Latest Map and Case Count* ....................... 2

New York Times, *Coronavirus Map: Tracking the Global Outbreak* ............................. 2

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

In 2014, Defendant Dylon Robert Hernandez ("Mr. Hernandez") was sentenced to a mandatory-minimum sentence of 120 months in custody based on his role in a conspiracy to distribute methamphetamine. The First Step Act now authorizes the Court to reassess his sentence holistically, using Guideline 1B1.13 and Section 3553(a) factors as guideposts, and to reduce his sentence if "extraordinary and compelling reasons [so] warrant." 18 U.S.C. § 3582(c)(1)(A).

Mr. Hernandez is morbidly obese, diabetic, and hypertensive. He has had Hepatitis C, which may have caused long-term damage to his liver and his immune system. All of these conditions put him at high risk for serious consequences should he become infected with COVID-19. And he is housed at USP Marion, a facility that is currently experiencing a COVID-19 outbreak. Beginning on July 18, 2020, staff at the prison placed Mr. Hernandez on lock down due to 6 positive cases in his unit. He remains on lock down today.

The pandemic, coupled with Mr. Hernandez's health conditions and the growing threat of COVID-19 in the prison where Mr. Hernandez is being held, is an extraordinary and compelling reason for relief under the First Step Act.

## II. FACTUAL BACKGROUND

**A.  Procedural History**

On March 10, 2014, Mr. Hernandez pled guilty, pursuant to a cooperation plea agreement, to a single count of violating of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A) and 18 U.S.C. § 2(b). On November 17, 2015, this Court sentenced Mr. Hernandez to a mandatory-minimum sentence of 120 months. (Ex. 1.) According to the Bureau of Prisons ("BOP") website, Mr. Hernandez's current release date is March 26, 2024.[1]

---

[1] *See* https://www.bop.gov/mobile/find_inmate/byname.jsp.

1

Prior to sentencing, Mr. Hernandez accepted responsibility for his actions and cooperated extensively with the government. The government recognized that his "cooperation was timely and complete. And it assuredly contributed to his co-conspirators' decisions to plead guilty." (Ex. 2 (lodged concurrently under seal) at p. 5.)

### B.   Mr. Hernandez's Health

Mr. Hernandez suffers from diabetes, morbid obesity, hypertension, and back pain. (Ex. 3; Ex. 4.) He has had chronic viral hepatitis C in the past. (Ex. 3 at p. 2.) He takes eight different medication, including daily insulin injections, to manage his conditions. (Ex. 5; Ex. 4 at p. 2.)

### C.   The COVID-19 Pandemic

Over the last few months, the nature of Mr. Hernandez's confinement has changed dramatically. "The COVID-19 pandemic is extraordinary and unprecedented in modern times in this nation." *United States v. Burrill*, No. 3:17-cr-00491-RS-1, dkt. no. 308 at 5 (N.D. Cal. Apr. 10, 2020). As courts recognize, "Prisons are tinderboxes for infectious diseases," *United States v. Rodriguez*, 2020 WL 1627331, at *1 (E.D. Pa. Apr. 1, 2020), and the BOP is struggling in the fight: As of this filing, COVID-19 has infected at least 10,029 federal inmates (99 of whom have died) and 1,045 BOP staff (one of whom has died);[2] more than 4.0 million people in the United States (of whom more than 143,000 have died);[3] and more than 15 million global citizens (of whom more than 624,000 have died).[4]

Mr. Hernandez's continued imprisonment places him at a higher risk of contracting COVID-19 than he would otherwise be exposed to. But his risk of death or severe illness far exceeds that of the typical inmate because his immune system is

---

[2] *See* Federal Bureau of Prisons, COVID-19 (last visited on June 12, 2020), https://www.bop.gov/coronavirus/ (listing COVID-19 cases).

[3] *See* New York Times, Coronavirus in the U.S.: Latest Map and Case Count (last visited on July 23, 2020), https://tinyurl.com/t9j9fdw.

[4] *See* New York Times, Coronavirus Map: Tracking the Global Outbreak (last visited on July 23, 2020), https://tinyurl.com/wdp4dym.

2

compromised by morbid obesity, diabetes, and hypertension. According to the Center for Disease Control, these conditions place Mr. Hernandez at extreme risk for death or severe illness from COVID-19.

### III. ARGUMENT

This Court has the authority to reduce Mr. Hernandez's sentence for "extraordinary and compelling reasons" under 18 U.S.C. 3582(c). Section 3582(c)(1)(A)(i) allows the Court to modify Mr. Hernandez's term of imprisonment as long as he can prove three things: First, that "extraordinary and compelling reasons," consistent with the factors available under 18 U.S.C. § 3553(a), exist; second, that he is not a danger to the community, and third, that the release is consistent with the policies of the Sentencing Guidelines. Finally, in addition to meeting these substantive requirements, Mr. Hernandez must also demonstrate that he has exhausted his administrative options. (18 U.S.C. 3582 (c)(1)(A)(i); U.S.S.G. § 1B1.13).

Before the First Step Act, Section 3582(c)(1) permitted only the BOP to initiate a compassionate release request, and the BOP's parsimonious use of compassionate release resulted in significant criticism.[5] In passing the First Step Act, Congress intended to significantly increase the use of compassionate release provisions by expanding the authority to modify sentences back to the sentencing court. 18 U.S.C. § 3582(c)(1)(a)(i).

The statute does not define "extraordinary and compelling reasons," and there is no "applicable" policy statement from the Sentencing Commission for the revised compassionate release procedures. Accordingly, the available policy statement provides guidance in determining whether extraordinary and compelling reasons exist, but the

---

[5] *See, e.g.*, Human Rights Watch, *The Answer Is No: Too Little Compassionate Release in U.S. Federal Prisons*, at 8 (2012) ("Senior BOP officials have failed to pay appropriate attention to how wardens define and exercise their discretion in some instances, and in others, have nurtured a culture of "no" that influences how wardens respond to prisoner requests. . . . Ranging from benign neglect to active resistance to program reform, DOJ oversight has muted the promise of compassion envisioned by Congress.")

Court is free to consider any factor that it could consider under section 3553(a). *United States. v. Beck*, 425 F. Supp. 3d. 573, 585-86 (M.D.N.C. 2019); *United States v. Cantu*, 2019 WL 2498923, at *5 (S.D. Tex. Jun. 17, 2019) ("[W]hen a defendant brings a motion for a sentence reduction under the amended provision, the Court can determine whether any extraordinary and compelling reasons other than those delineated in U.S.S.C. §1B1.13 cmt. n. 1(A)-(C) warrant granting relief."); *United States v. Wade*, No. 2:99-cr-00257-CAS, Dkt. No. 633 at 6-7 (C.D. Cal. Apr. 13, 2020) (collecting cases).

Finally, Section 3582(c)(1) states that a defendant can file a motion with the sentencing court "after the defendant has fully exhausted all administrative rights to appeal the failure of the Bureau of Prisons to bring a motion . . . or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier[.]" 18 U.S.C. § 3582(c)(1)(A).

## A. Mr. Hernandez's Health Conditions Are "Extraordinary and Compelling Circumstance(s)" In the Context of the COVID-19 Pandemic.

Analysis under Section 3582(c)(1)(A) begins with the Sentencing Commission's Guideline policy statement, U.S.S.G. § 1B1.13. The policy statement includes, among the ranks of "extraordinary and compelling reasons," defendants who are "suffering from a serious physical or medical condition . . . that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover."

Mr. Hernandez satisfies these criteria. Diabetes, hypertension, and morbid obesity are chronic conditions that do not have a cure, and from which he is not expected to recover.[6] The COVID-19 pandemic makes these conditions incredibly

---

[6] Center for Disease Control, What Is Diabetes? (last visited July 18, 2020), https://www.cdc.gov/diabetes/basics/diabetes.html; American Heart Association, Why

4

serious. On June 25, 2020, the Center for Disease Control ("CDC") listed diabetes and heart conditions as creating an "increased risk of severe illness from COVID-19."[7] The American Diabetes Association confirms that: "[p]eople with diabetes do face a higher chance of experiencing serious complications from COVID-19,"[8] a risk that is even greater for people like Mr. Hernandez, who suffer from heart-related conditions: "Having heart disease or other complications in addition to diabetes could worsen the chance of getting seriously ill from COVID-19, like other viral infections, because your body's ability to fight off an infection is compromised."[9] *See United States. v. Moore*, No. ED-FR-15-000555-VAP at 4 (C.D. Cal. July 16, 2020) (holding that a defendant suffering from hypertension and diabetes "falls into the population of high-risk individuals for developing severe symptoms from COVID-19").

Mr. Hernandez's morbid obesity is also a risk factor for severe illness from COVID-19.[10] Although he falls just short of having the BMI of 40 that qualifies as "severe obesity" to the CDC, his BMI of 35.9 places him in the morbidly obese category. (*See* Ex. 3; Ex. 4 at p. 2.) The Obesity Society states that "[p]eople with obesity . . . should therefore be considered at increased risk for severe disease [from COVID-19]. This is particularly true for people with moderate to severe obesity, whose

---

High Blood Pressure is a "Silent Killer," (last visited July 18, 2020), https://www.heart.org/en/health-topics/high-blood-pressure/why-high-blood-pressure-is-a-silent-killer; American Obesity Treatment Association, Obesity Basics, (last visited July 18, 2020), https://www.americanobesity.org/morbidObesity.htm.

[7] Center for Disease Control, People of Any Age with Underlying Medical Conditions, (last visited July 18, 2020), https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html?CDC_AA_refVal=https%3A%2F%2Fwww.cdc.gov%2Fcoronavirus%2F2019-ncov%2Fneed-extra-precautions%2Fgroups-at-higher-risk.html.

[8] American Diabetes Association, COVID-19 Faq, (last visited July 18, 2020), https://www.diabetes.org/covid-19-faq.

[9] American Diabetes Association, COVID-19 Faq, (last visited July 18, 2020), https://www.diabetes.org/covid-19-faq.

[10] CDC, *People Who Are at Higher Risk for Severe Illness*, (last visited July 18, 2020), https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-at-higher-risk.html.

compromised physiological state and burden of complications is generally higher. In addition, for people with severe obesity, management of severe COVID-19 may also be compromised by challenges in diagnosis and treatment caused by the physical effects of their obesity."[11]

One study of COVID-19 hospitalizations found that patients requiring mechanical ventilation "were more often male and obese,[12] with signs of compromised liver function and inflammation"—a trifecta that Mr. Hernandez possesses.[13] *See United States v. White*, 2:13-cr-20653-MFL-MAR (E.D. Mich. 2020) (releasing defendant to home confinement because he was both obese and had hypertension, putting him at a higher risk of serious illness should he become infected with COVID-19); *United States v. Blystone*, SA-14-CR-00172-DAE (S.D. Tex. 2020) (granting compassionate release for a severely obese defendant); *United States v. Ullings*, 2020 WL 2394096 (N.D. Georgia 2020) (releasing a defendant who was obese and hypertensive); *United States. v. Sawicz*, Case No. 08-cr-287, dkt. no. 66 at 4 (E.D.N.Y. Apr. 10, 2020) (releasing child pornography offender with hypertension based on increased risk of severe complications if he were to contract COVID-19). Several other academic studies have documented the high correlation between obesity and serious outcomes from COVID-19.[14]

---

[11] https://www.obesity.org/covid-19-and-obesity/.

[12] The CDC defines any BMI over 30 as obese. A BMI of between 35 and 40 is defined as Class II obesity. A BMI of over 40 is defined as severe obesity. https://www.cdc.gov/obesity/adult/defining.html, last accessed May 27.

[13] *COVID-19 Studies: Obesity Boosts Risk*, June 10, 2020, https://www.cidrap.umn.edu/news-perspective/2020/04/covid-19-studies-obesity-boosts-risk-diagnosing-health-workers.

[14] Lighter, J. et al. *Obesity in patients younger than 60 years is a risk factor for Covid-19 hospital admission*. Clin. Infect. Dis., https://doi.org/10.1093/cid/ciaa415. https://academic.oup.com/cid/article/doi/10.1093/cid/ciaa415/5818333; Simonnet, A. et al. *High prevalence of obesity in severe acute respiratory syndrome coronavirus-2 (SARS-CoV-2) requiring invasive mechanical ventilation*. Obesity (2020) https://doi.org/10.1002/oby.22831

Time is of the essence. USP Marion, the facility where Mr. Hernandez is housed, is currently experiencing an outbreak. On July 20, 2020, there were 19 confirmed inmate cases and one confirmed staff case; by July 22, 2020, there were 28 confirmed inmate cases and one confirmed staff case; and by July 23, 2020, there were 40 confirmed inmate cases and one confirmed staff case.[15]

The actual numbers are likely far higher. Because the BOP has failed to implement large-scale testing for COVID-19, it cannot effectively identify and isolate inmates and guards with the virus from those who are healthy. There is no consistency in testing capabilities at BOP facilities,[16] and the BOP has failed to implement a testing and isolation protocol for its staff.[17] On July 18, 2020, Mr. Hernandez pleaded that his "life is at risk" because USP Marion had placed him in lockdown due to 6 positive cases in his unit. (Ex. 6.) On July 22, 2020, Mr. Hernandez reported that multiple staff members do not wear masks, endangering inmates and other staff. (Ex. 7.)

Mr. Hernandez should not have to wait until he actually contracts COVID-19 to be considered for compassionate release. He was not sentenced to die in prison, and the Court should act to preserve his life and future. The combination of Mr. Hernandez's medical conditions and COVID-19 create an "extraordinary and compelling reason" for his release under the First Step Act.

---

[15] https://www.bop.gov/coronavirus/.

[16] Michael Balsamo, *Over 70% of Tested Inmates in Federal Prisons have COVID-19*, AP News (Apr. 29, 2020), https://bit.ly/2AiMjrF; *see also* Petition for Writ of Habeas Corpus, *Hallinan v. Scarantino*, No. 20-hc-2088-FL (E.D.N.C. May 26, 2020), ECF No. 1-18, at 19 (Declaration of Dr. Chris Beyrer) ("There is no widespread testing for coronavirus at FCC Butner."); *Wilson v. Williams*, --- F.Supp.3d ---, 2020 WL 1940882, at *3 (N.D. Ohio Apr. 20, 2020) (confirming that one facility only had 50 COVID-19 tests for a population of 2,400, noting that because there are so few tests, "medical staff has needed to triage test usage"); *United States v. Scparta*, --- F. Supp. 3d ---, 2020 WL 1910481, at *2 (S.D.N.Y. Apr. 20, 2020) (acknowledging confirmed COVID-19 cases on BOP's website but recognizing that "[t]esting in BOP facilities is severely limited, however, and the real numbers are likely far higher").

[17] Luke Barr, *Over 5,000 Corrections Officers Have Contracted COVID-19*, ABC News (May 5, 2020), https://abcn.ws/2zlB8hG ("staff are typically tested in the community"); *see also* AFGE, *A BOP Officer Contracted Coronavirus. He was Told to Return to Work ASAP* (May 4, 2020), https://bit.ly/35KSCjA ("The Bureau of Prisons only tested inmates, not staff.").

**B.     Mr. Hernandez's Release Does Not Pose a Danger to the Community**

The Guidelines require the Court to find that Mr. Hernandez's release would not present "a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." U.S.S.G. § 1B1.13(2). And, whether the Application Note applies or not, the Court is instructed to consider the factors set out in Section 3553(a) in deciding whether release is appropriate, which includes the need to protect the public from further crimes of the defendant.

Mr. Hernandez has struggled for most of his adult life with substance abuse. (Pre-Sentence Report ("PSR") ¶¶ 79-83.) He first tried marijuana at the age of 9 and began abusing methamphetamine when he was 16 years old. (PSR ¶¶ 79-83.) In prison, he has treated this addiction, received drug treatment, and turned his life around. (Ex. 9.) He has worked as a captain's orderly, giving him the opportunity to build skills that he can use in future employment.

If released, he will be residing with his nephew Edward Vargas III in Whitewater, CA. Mr. Vargas works at a distillation facility processing hand sanitizer, and is willing to help Mr. Hernandez find employment. Mr. Hernandez's aunt, Linda Barrack, is the CEO and President of Martha's Village and Kitchen in Indio, CA,[18] a homeless shelter near where Mr. Vargas resides. Ms. Barrack is standing by to connect Mr. Hernandez to local and state benefits. Mr. Hernandez will also have the support of the social services team at the Federal Public Defender's Office ("FPDO") during his reentry. The FPDO will assist Mr. Hernandez in securing local and state benefits, health care, and outpatient drug rehabilitation.

The Court must also consider the applicable Section 3553(a) factors. 18 U.S.C. § 3553(c)(1)(A). Releasing Mr. Hernandez does not put the community at risk. He has a place to live, a plan for ensuring that he takes advantage of available health care and social services, and a plan for supporting himself. He has spent his time in prison

---

[18] https://marthasvillage.org/meet-our-new-president-ceo-linda-barrack/.

8

fruitfully, treating an addiction that drove him to commit the offense in this case. All of this indicates that he can and will make a positive transition to the community.

The balance of factors under Section 3553(a) likewise reflect the appropriateness of a sentence reduction to time served. Mr. Hernandez does not need additional time in custody to serve the purposes of retribution or deterrence. *See* 18 U.S.C. § 3553(a)(2)(D). He has served 56 months of a prison term that this Court was required to impose because it was a mandatory minimum. Because the conditions of prison now expose him to an unacceptable high risk of contracting and dying form COVID-19, the Court should order him released with a sentence of time served.

## C. Mr. Hernandez Has Exhausted His Administrative Remedies.

Mr. Hernandez's claim for compassionate release is sufficiently exhausted. He filed his request with the Warden on May 26, 2020, and cited his medical conditions and his increased risk for serious COVID-19 complications. (*See* Ex. 8.) The Warden has not taken action since then, despite Mr. Hernandez following up with the Warden by email. (*See* Ex. 7.) Because Mr. Hernandez gave the agency an opportunity to address his claim in the first instance before filing with this Court, he need not further exhaust his administrative remedies. *See United States v. Parker*, Case No. 2:98-cr-00749-CAS-1, at 14 (C.D. Cal. May 21, 2020).

## IV. CONCLUSION

Mr. Hernandez qualifies for relief under the First Step Act as an inmate with serious, medical conditions that will not be cured. The impact of the COVID-19 crisis in combination with his medical conditions make such relief an urgent necessity.

///

///

For all of the reasons stated above, the Court has the authority to, and should, reduce Mr. Hernandez's sentence to time served.

Respectfully submitted,

CUAUHTEMOC ORTEGA
Interim Federal Public Defender

DATED: July 24, 2020

By: */s/ Ramanujan Nadadur*
RAMANUJAN NADADUR
Research and Writing Attorney
Office of the Federal Public Defender