1　CUAUHTEMOC ORTEGA (Bar No. 257443)
　　Interim Federal Public Defender
2　RAMANUJAN D. NADADUR (Bar No. 315718)
　　Deputy Federal Public Defender
3　Office of the Federal Public Defender
　　321 East 2nd Street
4　Los Angeles, California 90012-4202
　　Telephone: (213) 894-2911
5　Facsimile: (213) 894-0081

6　Attorneys for Defendant
　　DYLON R. HERNANDEZ

7
　　　　　　　　**UNITED STATES DISTRICT COURT**
8
　　　　　　　**CENTRAL DISTRICT OF CALIFORNIA**
9
　　　　　　　　　　**EASTERN DIVISION**
10

11　UNITED STATES OF AMERICA,　　　　Case No. 5:13-CR-000122-VAP

12　　　　　　　Plaintiff,

13　　　　v.　　　　　　　　　　　**REPLY IN SUPPORT OF MOTION**
　　　　　　　　　　　　　　　　　　**FOR COMPASSIONATE RELEASE**
14　DYLON ROBERT HERNANDEZ,　　　**UNDER 18 U.S.C. § 3582(c)(1)(A)**

15　　　　　　　Defendant.

16

17

18

19

20

21

22

23

24

25

26

27

28

1

# TABLE OF CONTENTS

**Page(s)**

I. Introduction ............................................................................................. 1

II. Argument ............................................................................................... 3

A.    Mr. Hernandez satisfies U.S.S.G. § 1B1.13. ..................................... 3

      1.    Mr. Hernandez' Obesity, Hypertension and Diabetes Are "Extraordinary and Compelling Reasons." ..................................... 3

      2.    Whether Mr. Hernandez Can Manage his Diabetes, Obesity, and Hypertension Has No Impact on the Fact that He Suffers From these Conditions, Putting Him at Serious Risk from COVID-19 ...... 6

B.    USP Marion Cannot Adequately Protect Mr. Hernandez From COVID-19. ........ 9

C.    Mr. Hernandez Is Not a Danger to the Community, and the Section 3553(a) Favor his Release. ................................................................... 12

D.    The Government Does Not Contest that Mr. Hernandez Has Met the Exhaustion Requirement in the Compassionate Release Statute. ........ 15

E.    The BOP's Ability to Release Mr. Hernandez to Home Confinement Has No Bearing on this Motion. ................................................... 15

III. Conclusion ......................................................................................... 16

## TABLE OF AUTHORITIES

**Page(s)**

1

**Federal Cases**

*United States v. Aminika Wright*,
No. 8:17-cr-00388-TDC, DE 50 (D. Md. May 19, 2020) ............................................ 7

*United States v. Ardila*,
3:03-cr-00264-SRU-1, 2020 WL 2097736 (D. Conn. May1,2020) ........................... 5

*United States v. Barber*,
6:18-cr-00446-AA, 2020 WL 2404679 (D. Or. May 12, 2020) ................................. 4

*United States v. Bertrand*,
3:00-cr-00012-LC-1, 2020 WL 2179387 (N.D. Fla.Apr. 29,2020) ........................... 5

*United States v. Bess*,
16-CR-156, 2020 WL 1940809 (W.D.N.Y. Apr. 22, 2020) ....................................... 5

*United States v. Brown*,
4:05-cr-00227-RP-CFB-1, 2020 WL 2091802 (S.D. Iowa Apr. 29,
2020) ........................................................................................................................... 5

*United States v. Burrill*,
17-CR-00491-RS-2, 2e (N.D. Cal. Apr. 10, 2020) ................................................... 6

*United States v. Coles*,
2:00-cr-20051-SEM-TSH-1, 2020 WL 1976296 (C.D. Ill. Apr. 24,
2020) ........................................................................................................................... 5

*United States v. Colvin*,
3:19-cr-00179-JBA-1, 2020 WL 1613943 (D. Conn. Apr. 2, 2020) ......................... 6

*United States v. Connell*,
18-cr-00281-RS-1, 2020 WL 2315858 (N.D. Cal. May 8, 2020) ............................. 4

*United States v .Curtis*,
1:03-cr-00533-BAH-1, 2020 WL 1935543 (D. D.C. Apr. 22, 2020) ....................... 5

*United States v. Dillard*,
1:15-cr-170-SAB, Dkt. No. 71 (D. Idaho Apr.27, 2020) ........................................... 5

*United States v. Ebbers*,
2020 WL 92399 (S.D.N.Y. Jan. 8, 2020) ................................................................. 4

2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**TABLE OF AUTHORITIES**

**Page(s)**

**Federal Cases (continued)**

*United States v. Etzel*,
   6:17-CR-00001-AA, 2020 WL 2096423 (D. Or. May 1, 2020) ...................................5

*United States v. Feucht*,
   No. 11-cr-60025-DMM, DE 51:5 (S.D. Fla. May 26, 2020) ....................................7

*United States v. Foreman*,
   3:19-cr-00062-VAB-1, 2020 WL 2315908 (D. Conn. May 11, 2020) ......................4

*United States v. Garrison*,
   No. 11-CR-0922-FMO-6 (C.D. Cal. July 8, 2020) ................................................4

*United States v. Ghorbani*,
   18-cr-255-PLF (D.D.C. Apr. 3, 2020) ...................................................................6

*United States v. Gileno*, 3:19-cr-161-(VAB) ........................................................6

*United States v. Gross*,
   1:15-cr-00769-AJN-3, 2020 WL 1673244 (S.D. N.Y. Apr. 6, 2020) ......................6

*United States v. Gutman*,
   1:19-cr-00069-RDB-2, 2020 WL 2467435 (D. Md. May 13, 2020) ........................4

*United States v. Guzman Soto*,
   1:18-cr-10086-IT-1, 2020 WL 2104787 (D. Mass. May 1, 2020) ..........................5

*United States v. Hammond*,
   1:02-cr-00294-BAH-1, 2020 WL 1891980 (D.D.C. Apr. 16, 2020) ........................6

*United States v. Handy*,
   3:10-cr-00128-RNC-8, 2020 WL 2487371 (D. Conn. May 14, 2020) ....................4

*United States v. Handy*,
   PJM 04-0559, 2020 WL 2041666 (D. Md. Apr. 28, 2020) .....................................5

*United States v. Hansen*,
   1:07-cr-00520-KAM-2, 2020 WL 1703672 (E.D. N.Y. Apr. 8, 2020) ....................6

*United States v. Harper*,
   7:18-cr-00025-EKD-JCH-1, 2020 WL 2046381 (W.D.Va. Apr. 28,
   2020) ....................................................................................................................5

## TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases (continued)**

*United States v. Harpine*,
    6:91-cr-60156-MC-1, Dkt.No. 221 (D.Or. Mar.27, 2020) .......................................... 6

*United States v. Hird*,
    No. 2:13-cr-39-TJS, DE 650: 2, 14 (E.D. Pa. May 19, 2020) ................................... 7

*United States v. Hungerford*,
    465 F.3d 1113 (9th Cir. 2006) ................................................................ 14

*United States v. Jackson*,
    4:14-CR-00576, 2020 WL 1955402 (S.D. Tex. Apr.23, 2020) ................................. 5

*United States v. Joling*,
    6:15-cr-00113-AA-1, 2020 WL 1903280 (D. Or. Apr.17, 2020) .............................. 6

*United States v. Lacy*,
    3:15-cr-30038-SEM-TSH-1, 2020 WL 2093363 (C.D. Ill. May 1,2020) ................... 5

*United States v. Logan*,
    1:12-cr-00307-LEK-1,Dkt. No. 179 (N.D.N.Y. Apr. 22, 2020) .............................. 5

*United States v. Lopez*,
    1:18-cr-02846-MV-1, 2020 WL 2489746 (D. N.M. May 14, 2020) .......................... 4

*United States v. Mattingly*,
    6:15-cr-00005-NKM-JCH, 2020 WL 2499707 (W.D. Va. May 14,
    2020) ..................................................................................................... 4

*United States v. Miller*,
    2:16-cr-20222-AJT-RSW-1, 2020 WL 1814084 (E.D. Mich. Apr. 9,
    2020) ..................................................................................................... 6

*United States v. Moore*,
    No. 5:15-00055-VAP (C.D. Cal. July 16, 2020) ................................................ 4

*United States v. Muniz*,
    4:09-cr-00199-1, 2020 WL 1540325 (S.D. Tex. Mar. 31, 2020) ............................. 6

*United States v. Musumeci*,
    1:07-cr-00402-RMB-1, Dkt. No. 58 (S.D. N.Y. Apr. 28,2020) ............................... 5

iii

**TABLE OF AUTHORITIES**

Page(s)

1

**Federal Cases (continued)**

*United States v. Pabon*,
   2:17-cr-00165-AB-1, 2020 WL 2112265 (E.D. Penn. May 4, 2020) ........................ 5

*United States v. Parker*,
   Case No. 2:98-cr-00749-CAS - 1 ...................................................... 14

*United States v. Pena*,
   1:15-cr-00551-AJN-1, 2020 WL 2301199 (S.D. N.Y. May 8, 2020) ........................ 4

*United States v. Pinkerton*,
   15-CR-30045-3, 2020WL2083968 (C.D. Ill. Apr. 30, 2020) .......................... 5

*United States v. Quintero*,
   6:08-cr-06007-DGL-1, 2020 WL 2175171 (W.D. N.Y. May 6, 2020) .................... 4

*United States v. Ramirez*,
   1:17-cr-10328-WGY, 2020 WL 2404858 (D. Mass. May 12, 2020).................... 4

*United States v. Reddy*,
   2:13-cr-20358-MFL-LJM-1, 2020 WL 2320093 (E.D. Mich. May 11, 2020) ......................................................................... 4

*United States v. Reginald Arnold Waddell*,
   Case No. 1:09-CR-345 (E.D. Va. August 4, 2020) ...................................... 3

*United States v. Reid*,
   3:17-cr-001750-CRB-2, 2020 WL 2128855 (N.D. Cal. May 5, 2020)..................... 5

*United States v. Rivernider*,
   3:10-cr-00222-RNC, 2020 WL 2393959 (D. Conn. May 12, 2020)......................... 4

*United States v. Robinson*,
   3:18-cr-00597-RS-1, 2020 WL 1982872 (N.D. Cal. Apr. 27, 2020) ..................... 5

*United States v. Rodriguez*, 2:03-cr-00271-AB-1, 2020 WL1627331 ............................ 6

*United States v. Samy*,
   2:16-cr-20610-AJT-DRG-1, 2020 WL 1888842 (E.D. Mich. Apr. 16, 2020) ....................................................................... 6

*United States v. Sanchez*,
   1:95-cr-00421-MGC-1,Dkt. No.290 (S.D. Fla. Apr. 27, 2020) ..................... 5

2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases (continued)**

*United States v. Sawicz*,
    1:08-cr-00287-ARR-1, 2020 WL 1815851 (E.D.N.Y. Apr. 10, 2020) ...................... 6

*United States v. Scparta*,
    1:18-cr-00578-AJN-1, 2020 WL 1910481 (S.D.N.Y. Apr. 20, 2020) ...................... 5

*United States v. Sedge*,
    1:16-cr-00537-KAM, 2020 WL 2475071 (E.D. N.Y. May 13, 2020) ...................... 4

*United States v. Ullings*,
    1:10-cr-00406-MLB-1, 2020 WL 2394096 (N.D. Ga. May 12, 2020) ...................... 4

*United States v. Valencia*,
    1:15-cr-00163-AT-1, 2020 WL 2319323 (S.D. N.Y. May 11, 2020) ...................... 4

*United States v. Vo*,
    15-CR-00310-BLF-2, 2020 WL 2300101 (N.D. Cal. May 7, 2020) ...................... 4

*United States v. Williams*,
    3:17-CR-121-(VAB)-1, 2020 WL 1974372 (D. Conn. Apr. 24, 2020) ...................... 5

*United States v. Zukerman*,
    1:16-cr-00194-AT-1, 2020 WL 1659880 (S.D.N.Y. Apr. 3, 2020) .......................... 6


**Federal Statutes**

18 U.S.C. § 3553 .................................................................................................*passim*

18 U.S.C. § 3582 .................................................................................................*passim*

Sen. Rep. 98-225, 121, 1984 U ...................................................................... 15

U.S.S.G. § 1B1.13 .......................................................................... 3, 6, 9, 15

v

# TABLE OF AUTHORITIES

**Page(s)**

**Other Authorities**

Center for Disease Control and Prevention, *People of Any Age with Underlying Medical Conditions* ................................................................... 3

Federal Bureau of Prisons, *COVID-19* ....................................................... 9, 11

Federal Bureau of Prisons, *Inmate Death at the FCI Terminal Island* (May 27, 2020) ...................................................................................................... 11

Gortmaker, Steven L et al., "Changing the future of obesity: science, policy, and action." Lancet (London, England) vol. 378, 9793 (2011): 838-47 ................................................................................................................ 7

Justin Wm. Moyer and Neena Satija, *Frail inmates could be sent home to prevent the spread of covid-19. Instead, some are dying in federal prisons*, The Washington Post (Aug. 3, 2020) ............................................... 3

Kar, Subhranshu Sekhar et al., "Childhood obesity-an insight into preventive strategies." Avicenna Journal of Medicine vol. 4, (2014): 88-93 ................................................................................................................ 8

Nausheen Husain, *2 dead at Marion federal prison during COVID-19 surge despite restrictive conditions, say inmates and family members*, Chicago Tribune (Aug. 7, 2020) ..................................................................... 11

Samantha Olson, *1-Week Prison Food Diet Reveals Problems With Inmate Meals: Low Cost, Bad Taste, And Very Little Nutrition*, Medical Daily (Aug. 27, 2015) ................................................................................................. 8

USA Jobs, *Supervisory Correctional Officer* ................................................. 13

# I. INTRODUCTION

Granting Dylon Robert Hernandez's ("Mr. Hernandez") motion for compassionate release requires that: (a) he either exhausted his petition or 30 days have elapsed since he submitted his request to the Warden, whichever comes first; (b) he has established an extraordinary or compelling reason for release; (c) his release will not pose a danger to the community; and (d) his release is consistent with the Section 3553(a) factors.

The status of each of these requirements is as follows:

The government does not contest that Mr. Hernandez has exhausted administrative remedies because the Warden denied his compassionate release request.

The government concedes that "extraordinary or compelling" reasons may exist justifying Mr. Hernandez's release because he suffers from diabetes and obesity, lifelong conditions that put him at elevated risk for serious complications if he were to contract COVID-19. Mr. Hernandez also suffers from hypertension, an equally serious and incurable condition.

Despite recognizing the danger of diabetes and obesity in the COVID-19 context, the government advances a needlessly humiliating argument, contending that these conditions are the result of Mr. Hernandez's lifestyle choices. The government lays blame with Mr. Hernandez despite the fact that he is in a federal prison on lockdown, where the Bureau of Prisons ("BOP") gives him a poor diet that exacerbates his underlying conditions, and where he lacks even the normal freedoms that he may have to manage his conditions. In any event, the cause of Mr. Hernandez's conditions is irrelevant, as is whether he can employ strategies to manage them. The record is clear that he suffers from poorly controlled diabetes, obesity, and hypertension, and the record is equally clear that these conditions are "extraordinary or compelling" reasons justifying his compassionate release.

Next, despite the evidence to the contrary, the government contends that the facility at USP Marion—the facility where Mr. Hernandez is housed and which is the

1

site of one of the worst outbreaks of COVID-19 in the BOP system—is successfully implementing precautions and treatment protocols. The government dismisses Mr. Hernandez's concerns, arguing that he is fearful of a "potential" uncontained outbreak. (*See* Gov't Opp. at 3.) This is no potential uncontained outbreak: in the past two weeks, USP Marion has had as high as 133 cases of COVID-19 amongst inmates and staff.[1] Two inmates have died.[2]

The government also argues that Mr. Hernandez is dangerous for two reasons: because he committed a serious federal crime, dealing a controlled substance, and because he has a criminal history. Mr. Hernandez acknowledges that he has made mistakes. His crime in this case, and in his prior cases, resulted from a long battle with methamphetamine addiction, one that began when Mr. Hernandez was a teenager. At the time of his sentence in this case, the Court could do little to tailor a sentence to his particular circumstances because Mr. Hernandez was subject to a mandatory minimum. Now, the Court can reassess his sentence in the context of the COVID-19 pandemic. Mr. Hernandez has made significant strides during his prison term by conquering his addiction and overcoming the roots of his criminal behavior. Mr. Hernandez's rehabilitation decreases his dangerousness to the community, and his release is consistent with the 3553(a) factors.

This Court should reduce Mr. Hernandez's sentence to time-served to protect him from being infected with COVID-19 and suffering serious complications from this viral disease. Time is of the essence to grant this relief. As Mr. Hernandez writes, "I don't want to die without seeing my son one last time." (Ex. 10.) Since the beginning of the year, 25 people have died in BOP custody while their request for compassionate

---

[1] https://www.chicagotribune.com/coronavirus/ct-marion-federal-prison-covid-deaths-numbers-20200807-swoge2zwxfeu3nitbndvpdjhm4-story.html.

[2] https://www.chicagotribune.com/coronavirus/ct-marion-federal-prison-covid-deaths-numbers-20200807-swoge2zwxfeu3nitbndvpdjhm4-story.html.

release was pending.[3] A district court in Virginia recently granted compassionate release to an inmate, only to find that he had died the night before. *See United States v. Reginald Arnold Waddell*, Case No. 1:09-CR-345 (E.D. Va. August 4, 2020).

## II.  ARGUMENT

**A.    Mr. Hernandez satisfies U.S.S.G. § 1B1.13.**

   1.    *Mr. Hernandez' Obesity, Hypertension and Diabetes Are "Extraordinary and Compelling Reasons."*

To release Mr. Hernandez for an extraordinary and compelling reason under U.S.S.G. § 1B1.13, the Court must find that he is "suffering from a serious physical or medical condition" that substantially diminishes his ability to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover."

The government concedes that this requirement may be met by Mr. Hernandez's diabetes and morbid obesity, which put him at elevated risk of serious complications from COVID-19. (Gov't Opp. at 16-17.) Although the government does not meaningfully address Mr. Hernandez's hypertension, this too puts him at increased risk. The Center for Disease Control ("CDC") has listed diabetes, serious heart conditions, and obesity as creating an "increased risk of severe illness from COVID-19."[4] The CDC also lists hypertension as potentially leading to an increased risk of serious illness from COVID-19.[5]

---

   [3] https://www.washingtonpost.com/local/public-safety/frail-inmates-could-be-sent-home-to-prevent-the-spread-of-covid-19-instead-some-are-dying-in-federal-prisons/2020/08/02/992fd484-b636-11ea-9b0f-c797548c1154_story.html.

   [4] https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html?CDC_AA_refVal=https%3A%2F%2Fwww.cdc.gov%2Fcoronavirus%2F2019-ncov%2Fneed-extra-precautions%2Fgroups-at-higher-risk.html; https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html.

   [5] https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html.

Courts in this district have released inmates suffering from diabetes, obesity, and hypertension, recognizing the unique danger posed to them by COVID-19 in a federal prison setting. *See United States v. Moore*, No. 5:15-00055-VAP (C.D. Cal. July 16, 2020) (inmate suffering from diabetes and hypertension); *United States v. Garrison*, No. 11-CR-0922-FMO-6, at 5-9 (C.D. Cal. July 8, 2020) (a 58-year-old man who tested positive for COVID-19 and suffered from hypertension, kidney disease, back pain, and neuropathy at FCC Lompoc meets the requirement for "extraordinary and compelling circumstance"); *id*. at 6-7 (collecting cases where courts granted compassionate release to inmates suffering hypertension, diabetes or obesity, among other ailments).[6]

---

[6] *See also United States v. Handy*, 3:10-cr-00128-RNC-8, 2020 WL 2487371 (D. Conn. May 14, 2020) (heart disease, hypertension and obesity); *United States v. Ebbers,* 2020 WL 92399 (S.D.N.Y. Jan. 8, 2020) (cardiomyopathy, diabetes, altered mental state); *United States v. Mattingly*, 6:15-cr-00005-NKM-JCH, 2020 WL 2499707 (W.D. Va. May 14, 2020) (wheelchair bound, with diabetes and hypertension); *United States v. Lopez*, 1:18-cr-02846-MV-1, 2020 WL 2489746 (D. N.M. May 14, 2020) (hypertension and Type II diabetes); *United States v. Gutman*, 1:19-cr-00069-RDB-2, 2020 WL 2467435 (D. Md. May 13, 2020) (56 year old with MS and hypertension); *United States v. Sedge*, 1:16-cr-00537-KAM, 2020 WL 2475071 (E.D. N.Y. May 13, 2020) (hypertension, hyperlipidemia, and coronary artery disease); *United States v. Barber*, 6:18-cr-00446-AA, 2020 WL 2404679 (D. Or. May 12, 2020) (hypertension, obesity and diabetes); *United States v. Rivernider*, 3:10-cr-00222-RNC, 2020 WL 2393959 (D. Conn. May 12, 2020) (diabetes, heart disease and hypertension); *United States v. Ramirez*, 1:17-cr-10328-WGY, 2020 WL 2404858 (D. Mass. May 12, 2020) (57 year old man with hypertension, diabetes, and high cholesterol)*; United States v. Ullings*, 1:10-cr-00406-MLB-1, 2020 WL 2394096 (N.D. Ga. May 12, 2020) (hypertension and obesity); *United States v. Valencia*, 1:15-cr-00163-AT-1, 2020 WL 2319323 (S.D. N.Y. May 11, 2020) (heart disease, hypertension, epileptic seizures, anxiety); *United States v. Foreman*, 3:19-cr-00062-VAB-1, 2020 WL 2315908 (D. Conn. May 11, 2020) (hypertension); *United States v. Reddy*, 2:13-cr-20358-MFL-LJM-1, 2020 WL 2320093 (E.D. Mich. May 11, 2020) (hypertension, Type II diabetes and orthopedic pain); *United States v. Pena*, 1:15-cr-00551-AJN-1, 2020 WL 2301199 (S.D. N.Y. May 8, 2020) (hypertension); *United States v. Connell*, 18-cr-00281-RS-1, 2020 WL 2315858 (N.D. Cal. May 8, 2020) (hypertension, high cholesterol and pre-diabetes); *United States v. Vo*, 15-CR-00310-BLF-2, 2020 WL 2300101 (N.D. Cal. May 7, 2020) (age, hyperlipidemia, hypertension); *United States v. Quintero*, 6:08-cr-

06007-DGL-1, 2020 WL 2175171 (W.D. N.Y. May 6, 2020) (immune suppression, obesity, diabetes and hypertension); *United States v. Reid*, 3:17-cr-001750-CRB-2, 2020 WL 2128855 (N.D. Cal. May 5, 2020*)* (Valley Fever, prone to heart disease, because hypertension and high cholesterol)*; United States v. Pabon*, 2:17-cr-00165-AB-1, 2020 WL 2112265 (E.D. Penn. May 4, 2020) (54 year old man with diabetes, hypertension, hemophilia, atopic dermatitis, gastroesophageal reflux disease, peptic ulcer, and diverticulitis.); *United States v. Guzman Soto*, 1:18-cr-10086-IT-1, 2020 WL 2104787 (D. Mass. May 1, 2020) (age (54), hypertension and diabetes); *United States v. Etzel*, 6:17-CR-00001-AA, 2020 WL 2096423 (D. Or. May 1, 2020) (hypertension, hepatitis C, coronary and cardiac issues); ; *United States v. Lacy*, 3:15-cr-30038-SEM-TSH-1, 2020 WL 2093363 (C.D. Ill. May 1,2020) (hypertension, diabetes, obesity); *United States v. Ardila*, 3:03-cr-00264-SRU-1, 2020 WL 2097736 (D. Conn. May1,2020) (age, diabetes, cardiovascular disease, hypertension, asthma and obesity); *United States v. Pinkerton*, 15-CR-30045-3, 2020WL2083968 (C.D. Ill. Apr. 30, 2020) (diabetes, hypertension, avascular necrosis); *United States v. Brown*, 4:05-cr-00227-RP-CFB-1, 2020 WL 2091802 (S.D. Iowa Apr. 29, 2020) (hypertension, migraines, low white blood cell count, sleep apnea, nasal obstruction); *United States v. Bertrand*, 3:00-cr-00012-LC-1, 2020 WL 2179387 (N.D. Fla.Apr. 29,2020) (prostrate cancer survivor, previous pulmonary embolism, diabetes, chronic kidney disease, asthma and hypertension); *United States v. Musumeci*, 1:07-cr-00402-RMB-1, Dkt. No. 58 (S.D. N.Y. Apr. 28,2020); *United States v. Handy*, PJM 04-0559, 2020 WL 2041666 (D. Md. Apr. 28, 2020) (lupus, hypertension, asthma, arthropathy, Reynaud's syndrome, and anemia); *United States v. Harper*, 7:18-cr-00025-EKD-JCH-1, 2020 WL 2046381 (W.D.Va. Apr. 28, 2020) (left ventricular hypertrophy, COPD, asthma, hypertension, emphysema, and sleep apnea); *United States v. Robinson*, 3:18-cr-00597-RS-1, 2020 WL 1982872 (N.D. Cal. Apr. 27, 2020) (hypertension and psoriasis); *United States v. Sanchez*, 1:95-cr-00421-MGC-1,Dkt. No.290 (S.D. Fla. Apr. 27, 2020) (hypertension); *United States v. Dillard*, 1:15-cr-170-SAB, Dkt. No. 71 (D. Idaho Apr.27, 2020) (hypertension); *United States v. Williams*, 3:17-CR-121-(VAB)-1, 2020 WL 1974372 (D. Conn. Apr. 24, 2020) (asthma, hypertension, ADHD, kidney issues, bypass surgery and high cholesterol); *United States v. Coles*, 2:00-cr-20051-SEM-TSH-1, 2020 WL 1976296 (C.D. Ill. Apr. 24, 2020) (48 year old hypertension and prostate issues); *United States v. Jackson*, 4:14-CR-00576, 2020 WL 1955402 (S.D. Tex. Apr.23, 2020) (kidney disease, hypertension, heart disease and lung disease); *United States v. Logan*, 1:12-cr-00307-LEK-1,Dkt. No. 179 (N.D.N.Y. Apr. 22, 2020) (hypertension); *United States v. Bess*, 16-CR-156,2020 WL 1940809 (W.D.N.Y. Apr. 22, 2020) (heart disease with limited heart function); *United States v .Curtis*, 1:03-cr-00533-BAH-1, 2020 WL 1935543 (D. D.C. Apr. 22, 2020) (wheelchair bound, hypertension, reflux, IBS and glaucoma); *United States v. Scparta*, 1:18-cr-

5

2. *Whether Mr. Hernandez Can Manage his Diabetes, Obesity, and Hypertension Has No Impact on the Fact that He Suffers From these Conditions, Putting Him at Serious Risk from COVID-19.*

The government suggests that because Mr. Hernandez's conditions can be controlled, he does not merit compassionate release under U.S.S.G. § 1B1.13. (Gov't Opp. at 17-18.) This argument runs counter to the government's own internal policy guidance. The Attorney General has issued a policy directive stating that diabetes and hypertension are among the serious medical conditions that present "an extraordinary and compelling reason" for compassionate release during the COVID-19 pandemic. The government has referred to this guidance in other cases: "Pursuant to policy

00578-AJN-1, 2020 WL 1910481 (S.D.N.Y. Apr. 20, 2020) (hypertension); *United States v. Joling*, 6:15-cr-00113-AA-1, 2020 WL 1903280 (D. Or. Apr.17, 2020) (hypertension, atherosclerosis, a history of transient ischemic attacks, dyslipidemia, obesity, history of prostate cancer); *United States v. Gileno*, 3:19-cr-161-(VAB);-1, 2020 WL 1904666 (D.Conn. Apr. 17,2020) (asthma); *United States v. Hammond*, 1:02-cr-00294-BAH-1, 2020 WL 1891980 (D.D.C. Apr. 16, 2020) (age and prostate cancer); *United States v. Samy*, 2:16-cr-20610-AJT-DRG-1, 2020 WL 1888842 (E.D. Mich. Apr. 16, 2020) (hypertension, heart failure, diabetes and asthma); *United States v. Sawicz*, 1:08-cr-00287-ARR-1, 2020 WL 1815851 (E.D.N.Y. Apr. 10, 2020) (hypertension); *United States v. Burrill*, 17-CR-00491-RS-2, 2e (N.D. Cal. Apr. 10, 2020) (hypertension); *United States v. Miller*, 2:16-cr-20222-AJT-RSW-1, 2020 WL 1814084 (E.D. Mich. Apr. 9, 2020) (heart disease, hypertension, COPD, Hepititis C, pulmonary disease, cirrhosis of the liver); *United States v. Hansen*, 1:07-cr-00520-KAM-2, 2020 WL 1703672 (E.D. N.Y. Apr. 8, 2020) (heart disease, hypertension, hyperlipidemia); *United States v. Gross*, 1:15-cr-00769-AJN-3, 2020 WL 1673244 (S.D. N.Y. Apr. 6, 2020) (hypertension, sleep apnea and obesity); *United States v. Zukerman*, 1:16-cr-00194-AT-1, 2020 WL 1659880 (S.D.N.Y. Apr. 3, 2020) (age, diabetes, hypertension and obesity); *United States v. Ghorbani*, 18-cr-255-PLF (D.D.C. Apr. 3, 2020) (hypertension); *United States v. Colvin*, 3:19-cr-00179-JBA-1, 2020 WL 1613943 (D. Conn. Apr. 2, 2020) (hypertension and diabetes); *United States v. Rodriguez*, 2:03-cr-00271-AB-1, 2020 WL1627331 (E.D.Penn. Apr. 1, 2020) (hypertension, diabetes and liver abnormalities); *United States v. Muniz*, 4:09-cr-00199-1, 2020 WL 1540325 (S.D. Tex. Mar. 31, 2020) (hypertension, diabetes and renal disease); *United States v. Harpine*, 6:91-cr-60156-MC-1, Dkt.No. 221 (D.Or. Mar.27, 2020) (hypertension).

directives of the Attorney General, the Government agrees that the defendant's serious medical condition (diabetes) presents an extraordinary and compelling reason that would allow compassionate release under the statute and guideline policy statement." *United States v. Feucht*, No. 11-cr-60025-DMM, DE 51:5 (S.D. Fla. May 26, 2020) (opposing compassionate release for other reasons); *see also United States v. Aminika Wright*, No. 8:17-cr-00388-TDC, DE 50 (D. Md. May 19, 2020) ("[I]n light of intervening Department of Justice guidance . . . the Government concedes that the defendant's Type I diabetes, and perhaps other of her medical conditions, constitute 'extraordinary and compelling circumstances' during the current pandemic, even if these conditions in ordinary times would not allow compassionate release."); *United States v. Hird*, No. 2:13-cr-39-TJS, DE 650: 2, 14 (E.D. Pa. May 19, 2020) (conceding that "the risk of COVID-19" to defendant with history of skin cancer, diabetes and hypertension, despite conditions being well-managed in BOP, and known to the sentencing court, "presents 'a serious physical or medical condition . . . that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility'").

The government side steps this guidance, and advances the deeply troubling and humiliating argument that Mr. Hernandez's morbid obesity and diabetes are his own fault. (Gov't Opp. at 18.) The government assumes that food consumption and the lack of exercise have caused Mr. Hernandez's conditions, rather than longstanding health, environmental, and genetic factors. *See, e.g.*, Gortmaker, Steven L et al., "Changing the future of obesity: science, policy, and action." Lancet (London, England) vol. 378, 9793 (2011): 838-47[7] (advocating obesity prevention efforts because "it becomes increasingly difficult to reverse obesity trends as excessive weight accumulates."); Kar, Subhranshu Sekhar et al., "Childhood obesity-an insight into preventive strategies."

---

[7] https://www.ncbi.nlm.nih.gov/pmc/articles/PMC3417037/.

7

Avicenna Journal of Medicine vol. 4,4 (2014): 88-93[8] (advocating prevention efforts among children because "[o]nce obesity is established, it is very difficult to reverse through interventions" whether in childhood or adulthood).

Even more shockingly, the government's Opposition makes no mention of the fact that the BOP has a central role to play in causing Mr. Hernandez's diabetes, obesity, and hypertension. Even on a good day before the pandemic, the BOP's food rations were devoid of "leafy greens, fiber, whole grains, heart-healthy fats, and other vital nutrients. The inmates could do without the potatoes, potato chips, mashed potatoes, and fiberless vegetable juice."[9] This has gotten worse during the pandemic. USP Marion does not provide inmates with a diabetic meal option. (Ex. 11.) Mr. Hernandez states that prison officials have served him a disproportionate amount of carbohydrates, and not enough protein and fresh vegetables.[10] For breakfast, he has been served Cinnamon Toast Crunch cereal with a side of sweet bread. For lunch, he has been served a chicken patty, white rice, beans, and bread. For dinner, he has been served chili mac and cheese with a side of white rice. Once every two weeks, Mr. Hernandez is given a turkey salad. And Mr. Hernandez cannot do any sort of exercise. Beginning on or about July 16, 2020, USP Marion officials placed all inmates on complete lock down. (Ex. 12; Ex. 16.) Mr. Hernandez was initially only permitted recreation for a day per week for an hour and a half. (Ex. 13.) Simply put, Mr. Hernandez's worsening obesity, hypertension, and diabetes are attributable to the conditions at the USP Marion facility, conditions for which the BOP is itself responsible.

---

[8] https://www.ncbi.nlm.nih.gov/pmc/articles/PMC4183902/#:~:text=Once%20obesity%20is%20established%2C%20it%20is%20very%20difficult,of%20behavioral%20changes%2C%20diet%20control%2C%20and%20physical%20activity.

[9] https://www.medicaldaily.com/1-week-prison-food-diet-reveals-problems-inmate-meals-low-cost-bad-taste-and-349572.

[10] Mr. Hernandez provided details of his diet to counsel in a legal call on August 11, 2020.

At bottom, the discussion of whether Mr. Hernandez can manage his underlying medical conditions through lifestyle choices distracts from the relevant legal issues in this case. It is beyond cavil that Mr. Hernandez suffers from obesity, hypertension, and diabetes, and that COVID-19 poses an acute risk to him. That is enough to merit compassionate release under U.S.S.G. § 1B1.13.

**B.     USP Marion Cannot Adequately Protect Mr. Hernandez From COVID-19.**

Mr. Hernandez is at an especially high risk of contracting and suffering serious complications from COVID-19 because the disease-prevention and treatment protocols at USP Marion are insufficient to protect the inmates. According to the BOP, there remain 16 active cases of COVID-19 at USP Marion.[11] This number has been has high as 133 recently.[12] And despite providing treatment to its inmates and staff, 2 inmate deaths have resulted from the outbreak at USP Marion, most recently on August 3, 2020.[13]

The boilerplate language in the Opposition about the BOP's and USP Marion's best efforts to treat inmates and control COVID-19 is irrelevant. (Gov't Opp. at 4-17.) The reality on the ground looks like this:

- After inmates in Mr. Hernandez's unit received positive tests for COVID-19, the infected inmates remained in their cells for several days, exposing all other inmates in the unit. The cells in this unit are about 30 inches from each other.[14] Inmates are in close proximity to one another, and are unable to observe social distancing. (Ex. 14.) On August 13, 2020, Mr. Hernandez

---

[11] https://www.bop.gov/coronavirus/.

[12] https://www.chicagotribune.com/coronavirus/ct-marion-federal-prison-covid-deaths-numbers-20200807-swoge2zwxfeu3nitbndvpdjhm4-story.html.

[13] https://www.bop.gov/resources/news/pdfs/20200803_press_release_mar.pdf.

[14] Mr. Hernandez provided details about his unit to counsel in a legal call on August 11, 2020.

9

was moved to a new unit, and he is now in a 3-person cell, where inmates cannot observe social distancing. [15]

- Although prison staff at USP Marion have received personal protective equipment ("PPE"), inmates have not received any such equipment. (Ex. 16 ¶ 6; Ex. 14 at ¶ 5.)

- BOP staff at USP Marion are not observing mask protocols and are freely moving between COVID-19-contaminated and uncontaminated areas. (Ex. 15.)

- Some prison staff are refusing to get tested for COVID-19 and are describing COVID-19 as a "hoax." (Ex. 16 at ¶¶ 7, 9.)

- Inmates are unable to observe basic hygiene in USP Marion. Beginning April 1, 2020, the Warden of USP Marion limited inmates' access to showers and medical care. (Ex. 17.) Recently, prison staff denied Mr. Hernandez and other inmates access to a shower for seven straight days, and instructed them to shower in the sink of their cells. (Ex. 18.) The Commissary at USP Marion has run out of hygiene products such as bar soap and body wash, and has never carried hand sanitizer for purchase. (Ex. 11.)

- A unit officer ordered Mr. Hernandez to clean cells that had been vacated by COVID-19-positive inmates without giving him PPE or proper training. (Ex. 18; Ex. 19.)

- Inmates at USP Marion have severely limited access to medical care for routine appointments and checkups, let alone COVID-19 treatment. (Ex. 17.) Although Mr. Hernandez requires insulin for his diabetes, he receives insulin treatment on an irregular schedule, "whenever the nurse is able to bring it." (Ex. 11.) Mr. Hernandez writes that he "witnessed an inmate []

_____

[15] Mr. Hernandez provided details about his new unit to counsel in a legal call on August 13, 2020.

10

having multiple symptoms of a heart related issue. After [the inmate] chewed 3 asprin, the symptoms started to subside. The nurse told him to submit a sick call slip and no one has been to see him or check on him in 2 weeks." (Ex. 11.)

- The Chicago Tribune corroborates much of the information stated by Mr. Hernandez and other inmates at USP Marion. The Tribune reports that in addition to deficient protocols, the USP Marion prison administration has resorted to draconian measures to control COVID-19. These measures include banning the use of phones and email, using solitary confinement cells to quarantine inmates who have done nothing wrong, and isolating everyone who has tested positive together in a recreation room.[16]

Even the BOP's own publications show how dire the conditions at USP Marion are. The Marion facility has had as many as 133 COVID-19-positive inmates and staff in the past two weeks.[17] The BOP tries to avoid this statistic by stating that some of the inmates who initially contracted COVID-19 have "recovered,"[18] but the high number of reported "recovered" cases does not provide any assurance that the virus is contained. On May 24, 2020, an inmate at FCI Terminal Island died due to complications from COVID-19, after the BOP declared him "recovered" from the virus just two weeks earlier.[19]

The precautions and treatment protocols at USP Marion are wholly deficient, draconian, and often ignored in practice. The only way to protect Mr. Hernandez from COVID-19 is to release him.

---

[16] https://www.chicagotribune.com/coronavirus/ct-marion-federal-prison-covid-deaths-numbers-20200807-swoge2zwxfeu3nitbndvpdjhm4-story.html.

[17] https://www.bop.gov/coronavirus/.

[18] https://www.bop.gov/coronavirus/.

[19] BOP, *Inmate Death at the FCI Terminal Island* (May 27, 2020), *available at* https://www.bop.gov/resources/news/pdfs/20200527_press_release_trm.pdf.

**C.      Mr. Hernandez Is Not a Danger to the Community, and the Section 3553(a) Favor his Release.**

The government argues that Mr. Hernandez is a danger to the community for two reasons: (1) he committed a serious crime (Gov't Opp. at 18.); and (2) his criminal history suggests he is likely to risk the safety of the community by not observing protocols to prevent the spread of COVID-19 (Gov't Opp. at 18-19.)

Mr. Hernandez's criminal history is certainly relevant. But it is mitigated by his addiction. Mr. Hernandez started abusing drugs and alcohol as a teenager. (PSR ¶¶ 79-83.) This addiction forced him into riskier and riskier behavior to sustain his lifestyle. There are times when he was able to control his addiction, and during these moments, he has shown that he can be a productive member of society. (PSR ¶¶ 87-90.)

Addiction, however, does not go away overnight. And Mr. Hernandez has resorted to dealing drugs to fuel his dependency. This changed when he went to prison for the instant offense. Incarcerated away from his family and friends, Mr. Hernandez has realized the consequences of his actions and committed himself to turning his life around. (Ex. 10.) He has completed several drug education and treatment programs.[20] Although he has been unable to continue drug treatment because of lock down restrictions, he will continue his drug treatment if released. He has a bed waiting for him at the Ranch Recovery Center in Desert Hot Springs, CA.[21] There, he will undergo residential treatment and be sponsored by his close friend, Joey Clipper, a counselor who has known Mr. Hernandez for about 25 years. (Ex. 20.) Mr. Clipper writes of Mr. Hernandez: "I have seen through our letters and heard through our many conversations the absolute change, as well as the desire, and commitment to continue this change on a constant basis from Dylon." (Ex. 20.)

---

[20] Mr. Hernandez provided details of his drug treatment education to counsel in a legal call on August 11, 2020. Mr. Hernandez read out to counsel his individualized reentry plan,

[21] http://ranchrecovery.org/.

12

Beyond the residential drug treatment program, Mr. Hernandez offers a fully formulated release plan, which further mitigates his purported dangerousness. After completing drug treatment at the Ranch Recovery Center, he will live in Whitewater, CA with his nephew Edward Vargas. At home, Mr. Hernandez will be near family members and friends who are standing by to support him. (Ex. 22; Ex. 21; Ex. 23.) John Zazueta, a childhood friend, will offer Mr. Hernandez employment in his self-owned custom auto business. (Ex. 21.)

Mr. Hernandez has a few incident reports in prison, (Gov't Opp. Ex. G) but these reports largely stem from his absence at work assignments and one incident in which he admitted to consuming alcohol in 2016, soon after he was first incarcerated. (Gov't Opp. Ex. G.) Mr. Hernandez currently works as a captain's orderly in USP Marion, a position that he has held for two years. (Ex. 19.) A captain in the BOP system is a supervisory position, reserved for experienced and senior government officials: "The Captain is responsible for institutional security, inmate conduct and discipline, inmate work, control of hazardous tools and material, safety, sanitation, control and use of institution vehicles, and key control in his assigned areas....The Captain serves as an advisor to the Warden and the correctional staff in the formulation and implementation of institution policies, procedures and programs."[22] The captain's orderly is an inmate who assists the captain with all of these tasks, and it is a privilege reserved only for compliant and well-behaved prisoners. To the extent that Mr. Hernandez has refused work assignments in the past, the Court should consider that USP Marion has placed his life at risk through work. As Mr. Hernandez states in a recent letter, "[b]ecause of my increased risks associated with this virus and the facility not providing proper safeguards, I am going to refuse all further work assignments and 'shelter in place' by quarantining in my cell." (Ex. 19.)

---

[22] https://www.usajobs.gov/GetJob/ViewDetails/547423500.

13

The government next argues that Mr. Hernandez's criminal history demonstrates that he will violate the rules designed to protect the community from COVID-19. (Gov't Opp. at 19.) This is a specious argument. His criminal history has nothing to do with hygiene or health concerns, which is what is at stake with respect to COVID-19. To the extent that any of his criminal history applies, he has had a prison term in which to rehabilitate himself. And he has done so, taking classes and treating his addiction. Now, like others with serious medical conditions, he will obey COVID-19 protocols out of self-preservation, if nothing else. He has seen firsthand the horrors inflicted by this disease.

Finally, the government contends that decreasing Mr. Hernandez's sentence now would give him a "windfall." (Gov't Opp. at 21.) In 2015, however, this Court sentenced Mr. Hernandez to a mandatory minimum sentence. Mandatory minimums can be a draconian penalty that limit this Court's discretion to holistically assess a person, their background, and their rehabilitation. *See United States v. Hungerford*, 465 F.3d 1113, 1121 (9th Cir. 2006) (Graber, J. concurring) (quoting Justice Anthony Kennedy as saying "I can accept neither the necessity nor the wisdom of federal mandatory minimum sentences. In too many cases, mandatory minimum sentences are unwise and unjust.")

Now, the Court can reassess Mr. Hernandez's sentence in the context of the COVID-19 pandemic, at a time when he has rehabilitated himself and no longer poses a danger to the community. Importantly, however, if the Court believes that the Section 3553(a) factors are not decisively in Mr. Hernandez's favor, the statute permits the Court to order Mr. Hernandez's release on home confinement for some period of time to ensure his transition to the community.

14

**D.      The Government Does Not Contest that Mr. Hernandez Has Met the Exhaustion Requirement in the Compassionate Release Statute.**

The government does not contest that the Warden has received and denied Mr. Hernandez's compassionate release request, which means that he has met the exhaustion requirements set in 18 U.S.C. § 3582(c)(1)(A). (Ex. 24.) *See United States v. Parker*, Case No. 2:98-cr-00749-CAS - 1, at 14 (C.D. Cal. May 21, 2020 ("Accordingly, because [the defendant] filed an administrative request for compassionate release with the warden based on the same medical conditions which form the basis for [the defendant's] present motion, and because the warden denied that request, [the defendant] has satisfied Section 3582(c)(1)(A)'s exhaustion requirement.")

**E.      The BOP's Ability to Release Mr. Hernandez to Home Confinement Has No Bearing on this Motion.**

Because Mr. Hernandez has demonstrated that he exhausted his request, and that he satisfies the criteria in U.S.S.G. § 1B1.13 that his release would not pose a danger to the community and is consistent with the Section 3553(a) factors, this Court should grant his release.

Whether there is some other theoretical avenue of relief available to him is not the point. (Opp. at 9-11.) Of course, Mr. Hernandez's release from custody on home confinement would be a welcome development and moot the instant request. But the BOP's ability to release him to home confinement should not impact the Court's decision here. When Congress passed the initial compassionate release statute, it made clear that it wanted to keep "sentencing power in the judiciary where it belongs." Sen. Rep. 98-225, 121, 1984 U.S.C.C.A.N. 3182, 3304, at *60, 1983 WL 25404 (Aug. 4, 1983). What the BOP may do in theory does not preclude this Court from exercising its statutory authority to decide the instant Motion for compassionate release.

15

1

## III. CONCLUSION

The Court should grant Mr. Hernandez compassionate release and re-sentence him to a time-served sentence. In the alternative, the Court should order that Mr. Hernandez serve the remainder of his sentence in home confinement.

Respectfully submitted,

CUAUHTEMOC ORTEGA
Interim Federal Public Defender

DATED: August 14, 2020            By _____
                                     RAMANUJAN D. NADADUR
                                     Deputy Federal Public Defender
                                     Office of the Federal Public Defender