UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
**CRIMINAL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | **EDCR 13-00122-VAP** | Date | August 19, 2020 |
| Title | *United States of America v. Dylon Robert Hernandez* | | |

Present: The Honorable    VIRGINIA A. PHILLIPS, UNITED STATES DISTRICT JUDGE

| CHRISTINE CHUNG | Not Reported |
|---|---|
| Deputy Clerk | Court Reporter |

Attorney(s) Present for Plaintiff(s):    Attorney(s) Present for Defendant(s):

None    None

**Proceedings:** **MINUTE ORDER DENYING MOTION FOR COMPASSIONATE RELEASE [107] (IN CHAMBERS)**

Pending before the Court is Defendant Dylon Robert Hernandez's ("Defendant") "Motion for Compassionate Release Under 18 U.S.C. § 3582(c)(1)(A)" ("Motion"), filed on July 24, 2020. Having considered the papers filed in support of, and in opposition to, the Motion, the Court finds this matter appropriate for resolution without oral argument pursuant to Local Rule 7-15 and DENIES the Motion for the following reasons.

**I.    Background**

On March 10, 2014, Defendant pled guilty to a single-count Information charging him with distribution of methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A)(viii) and 18 U.S.C. § 2(b). On November 17, 2015, the Court sentenced Defendant to a term of imprisonment of 120 months followed by a five-year term of supervised release. Defendant's projected release date is March 26, 2024.

Defendant filed the instant Motion on July 24, 2020. The Court ordered the Government to file its response to the Motion by August 7, 2020 and Defendant to file a reply thereto by August 14, 2020. The Government filed timely Opposition to the Motion on August 7, 2020. Defendant filed a timely Reply on August 14, 2020. The Court then took the matter under submission.

**II.     Legal Standard**

Defendant moves for relief pursuant to 18 U.S.C. § 3582(c)(1)(A), which allows a court to modify a sentence under certain circumstances.  This statute was amended by the First Step Act, which went into effect on December 21, 2018.  See First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194.  Prior to the passage of the First Step Act, only the Director of the Bureau of Prisons ("BOP") could file a motion for compassionate release, which rarely occurred.  Section 603(b) of the First Step Act modified 18 U.S.C. § 3582(c)(1)(A) to "increase[] the use and transparency of compassionate release."  Pub. L. No. 115-391, 132 Stat. 5194, at *5239 (capitalization omitted).  That section now provides a sentencing court may modify a sentence either upon a motion of the Director of the BOP "or upon motion of the defendant after [he] has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on [his] behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility . . . ."  18 U.S.C. § 3582(c)(1)(A).

As amended, 18 U.S.C. § 3582(c)(1)(A)(i) permits a sentencing court to grant a motion for compassionate release filed by a defendant where "extraordinary and compelling reasons warrant such a reduction" and the "reduction is consistent with applicable policy statements issued by the Sentencing Commission . . . ."

Issued in 2006 and last amended on November 1, 2018, the Application Notes of the U.S. Sentencing Guidelines § 1B1.13 provide that "extraordinary and compelling reasons exist" in the following circumstances:

> (A) Medical Condition of the Defendant. –
>> (i) The defendant is suffering from a terminal illness (i.e., a serious physical and advanced illness with an end of life trajectory) . . . .
>> (ii) The defendant is –
>>> (I) suffering from a serious physical or medical condition,
>>> (II) suffering from a serious functional or cognitive impairment, or
>>> (III) experiencing deteriorating physical or mental health because of the aging process,
>>
>> that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.
>
> (B) Age of the Defendant. – The defendant (i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less.
>
> (C) Family Circumstances. –
>> (i) The death or incapacitation of the caregiver of the defendant's minor child or minor children.
>> (ii) The incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner.

> (D) Other Reasons. – As determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C).

U.S.S.G. § 1B1.13, Application Note 1; see also 28 U.S.C. § 994 (authorizing the U.S. Sentencing Commission to describe what should be considered extraordinary and compelling reasons for sentence reduction). Section 1B1.13 also directs courts to consider "the factors set forth in 18 U.S.C. § 3553(a), to the extent that they are applicable . . . ." Finally, the policy statement requires a finding that "the defendant is not a danger to the safety of any other person or the community provided in 18 U.S.C. § 3142(g)." U.S.S.G. § 1B1.13(2).

The Sentencing Commission's policy statement has not been amended since the effective date of the First Step Act to refer to § 3852(c)(1)(A) motions filed by defendants. District courts disagree whether the policy statement set forth at U.S.S.G. § 1B1.13 applies to motions for compassionate release filed by defendants. See United States v. Singui, No. 2:12-CR-00851-CAS-1, 2020 WL 2523114, at *4 (C.D. Cal. May 18, 2020) (collecting cases). In the absence of controlling authority on the applicability of U.S.S.G. § 1B1.13 to motions for reduction of sentence filed by defendants, and in light of the limited statutory exceptions to the general rule of finality of judgment, the Court follows the guidance of the foregoing policy statement which defines "extraordinary and compelling reasons" that warrant compassionate release pursuant to 18 U.S.C. § 3582(c)(1). See Dillon v. United States, 560 U.S. 817, 824 (2010) ("'[A] judgment of conviction that includes [a sentence of imprisonment] constitutes a final judgment' and may not be modified by a district court except in limited circumstances.") (quoting 18 U.S.C. § 3582(b)); see also United States v. Parker, No. 2:98-CR-00749-CAS-1, 2020 WL 2572525, at *8-9 (C.D. Cal. May 21, 2020) (finding U.S.S.G. § 1B1.13 no longer limiting but considering the policy statement as guidance). The Court does not, as it need not, determine whether the foregoing policy statement is binding here. See, e.g., United States v. Head, No. 2:08-cr-00093-KJM-2, 2020 WL 3180149, at *3 (E.D. Cal. Jun. 15, 2020).

**III.    Discussion**

In the Motion, Defendant argues the COVID-19 pandemic and ongoing outbreak of the COVID-19 virus at the United States Penitentiary at Marion, Illinois (hereinafter "USP-Marion"), where he is housed, coupled with his chronic medical conditions constitute extraordinary and compelling reasons to reduce his sentence and release him from custody. Defendant explains he "suffers from diabetes, morbid obesity, hypertension, and back pain" and "had chronic viral hepatitis C in the past." (Mot. at 2, Exh. 3-4.) In his Reply, Defendant explains if the Court grants the Motion, upon his release he will complete drug treatment at the Ranch Recovery Center, after which he will move in with his nephew in Whitewater, California, and obtain employment from a childhood friend at a custom automobile business. (Reply at 13, Exh. 21-23.)

In Opposition, the Government concedes Defendant's medical conditions likely qualify under U.S.S.G. § 1B1.13, but it argues Defendant cannot meet the "extraordinary and compelling reasons" standard because he remains a continuing danger to the public and the 18 U.S.C. § 3553(a) factors do not support the reduction of his sentence. The Government also argues at

length about the Bureau of Prisons' ("BOP") efforts to implement COVID-19 safety precautions. The Government contends USP-Marion has taken significant steps to contain the spread of COVID-19 at the facility.  To wit, Defendant has been tested four times for COVID-19 between July 16, 2020 and August 4, 2020 and each test has been negative.  (See Opp'n at Exh. C; James C. LeClair Declaration ("LeClair Decl.") at ¶ 4(e).)

Preliminarily, it is undisputed Defendant has exhausted his administrative remedies, as he submitted his request for compassionate release to the warden at USP-Marion on May 26, 2020 and the warden denied the request on July 31, 2020.  (See Mot. at 9, Exh. 7-8; Opp'n at 3, Exh. D).

The Court now turns to the merits of the Motion.

Regarding the worldwide COVID-19 public health pandemic, despite the BOP's efforts to prevent the spread of COVID-19 among its inmate population, as detailed in the Government's Opposition, there has been an outbreak of COVID-19 among inmates and staff at USP-Marion, which has not ended.  See Bureau of Prisons (BOP), COVID-19 Cases (updated daily), available at https://www.bop.gov/coronavirus.  As of August 18, 2020, the BOP has reported 4 inmates and 6 staff are currently COVID-19 positive, 2 inmates have died from COVID-19, and 136 inmates and 7 staff have recovered from COVID-19 at USP-Marion. Defendant has shown these numbers increased significantly since July 20, 2020.  (See Mot. at 7 (indicating "[o]n July 20, 2020, there were 19 confirmed inmate cases and one confirmed staff case; by July 22, 2020, there were 28 confirmed inmate cases and one confirmed staff case; and by July 23, 2020, there were 40 confirmed inmate cases and one confirmed staff case.").)

The Centers for Disease Control and Prevention has identified several risk factors for those likely to experience severe symptoms if they contract COVID-19, including but not limited to, people over the age of 65, people with chronic lung disease or moderate to severe asthma, people who have serious heart conditions, people who are immunocompromised, people with severe obesity, people with hypertension, and people with diabetes.  See Centers for Disease Control and Prevention, Coronavirus Disease 2019 (COVID-19), People Who Are at Higher Risk, available at https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-at-higher-risk.html (last updated June 25, 2020).  Defendant's medical records show he is obese and has been diagnosed with hypertension and diabetes.  Accordingly, Defendant falls into the population of high-risk individuals for developing severe symptoms from COVID-19.  The Government does not dispute Defendant's obesity and diabetes place him at a higher risk of developing severe complications from COVID-19.  (Opp'n at 16-18.)

Based on the record before the Court, Defendant has shown he is at high risk for developing severe symptoms from COVID-19 and he is housed at a facility with an outbreak of the COVID-19 virus.  Defendant has met his burden to show he suffers from "a serious physical or medical condition" that "substantially diminishes [his] ability . . . to provide self-care within the environment of a correctional facility and from which he . . . is not expected to recover." U.S.S.G. § 1B1.13, Application Note 1(A)(ii); accord United States v. Barber, No. 6:18-cr-00446-AA, 2020 WL 2404679, at *5 (D. Or. May 12, 2020); United States v. Fischman, No. 16-cr-00246-HSG-1, 2020 WL 2097615, at *3 (N.D. Cal. May 1, 2020).

The Court next turns to the relevant 18 U.S.C. § 3553(a) factors.  <u>See</u> U.S.S.G. § 1B1.13.

Regarding the nature and circumstances of the offense, Defendant's underlying crime was serious as he was responsible for distributing a significant amount of methamphetamine, 191.6 grams according to the Presentence Report ("PSR").  Further, Defendant played a central role in this drug trafficking conspiracy with close family members.  Moreover, Defendant was on pretrial release before he was sentenced and failed to comply with the conditions imposed.[1]  This factor weighs against granting the Motion.

As to his history and characteristics, Defendant has a lengthy criminal history.  The PSR assigned Defendant 17 criminal history points and placed him in criminal history category VI, the highest category.  When Defendant was 20 years old, he was convicted of second degree burglary twice and criminal trespass in three different cases.  At the age of 21, Defendant was convicted of grand theft of a firearm.  At 22 and 27 years old, Defendant was convicted of evading a police officer.  At the age of 28, Defendant was convicted of receiving known stolen property.  At 29 years old, Defendant was convicted of possession of methamphetamine.  Defendant was convicted of the underlying offense in this case at the age of 33.  Defendant has had a lengthy struggle with substance abuse, having used methamphetamine since he was 16 years old.  Defendant is now 39 years old and received his GED in prison in 2018.  (Mot. at Exh. 9.)  He has also taken two drug rehabilitation classes in prison.  (<u>Id.</u>)  He does not have a clean prison disciplinary record, however.  Defendant was disciplined for refusing his work assignment three times, on January 29, 2018, January 10, 2018, and August 23, 2016.  He was disciplined for being absent from his work assignment on December 14, 2016.  Finally, he was disciplined after admitting to drinking alcohol on September 20, 2016.  (<u>See</u> Opp'n at Exh. G.)  Defendant currently works as a captain's orderly.  (<u>See</u> Mot. at 8.)

On balance, the Court finds this factor weighs against granting the Motion, especially because of Defendant's lengthy and serious criminal history.  <u>See</u>, <u>e.g.</u>, <u>United States v. Shrout</u>, No. 3:15-CR-00438-JO, 2020 WL 3483703, at *4-5 (D. Or. June 26, 2020) (denying motion for compassionate release because of the defendant's history and characteristics, including engaging in financial fraud for decades and promising to self-report to prison after sentencing and absconding); <u>United States v. Kim</u>, Cr. No. 13-303 SOM, 2020 WL 3213312, at *3-4 (D. Haw. June 15, 2020) (denying motion for compassionate release because the defendant's criminal history included two prior drug trafficking convictions and a conviction for assault, he had an outstanding arrest warrant for assault, he provided little evidence of rehabilitation, and he had attempted to escape from his correctional facility in 2017).

---

[1] On August 13, 2015 the Court issued Defendant an order to show cause ("OSC") why his pretrial release should not be revoked.  On August 31, 2015, the Court held a hearing on the matter, denied the Government's motion for detention, and ordered Defendant to participate in a home detention program including electronic monitoring, at his own expense.  Upon receipt of a report from Defendant's Pretrial Services Officer, the Court issued an arrest warrant for Defendant's violation of the conditions of his home detention on November 13, 2015.  At his sentencing hearing on November 16, 2015, Defendant was remanded into custody.

Regarding the need for the sentence imposed to reflect the seriousness of the offense, promote respect for the law, afford adequate deterrence to criminal conduct, and protect the public from further crimes of the defendant, the Court finds these factors support denying the Motion as well.  The Court imposed a mandatory minimum sentence of 120 months.  That sentence was well below the United States Sentencing Guidelines range of 151 to 188 months as calculated in the PSR.  Defendant has served 56 months, approximately 46% of his sentence.  In other words, Defendant has not yet served even half of his sentence, which was already a significant downward departure from the Guidelines range.  See, e.g., United States v. Davis, 12-cr-712 (SHS), 2020 WL 3790562, at *5 (S.D.N.Y. July 7, 2020) (denying a motion for compassionate release for a defendant who had served 50% of his sentence, the court stated it "could not conclude that, even considering the health risks posed by COVID-19 and Davis's steps taken toward rehabilitation, the sentencing factors that supported a 228-month sentence now favor a 50% sentence reduction."); United States v. Francisco, No. 19 CR 131 (PAE), 2020 WL 3507958, at *3 (S.D.N.Y. June 29, 2020) (concluding "a reduction in sentence would be inconsistent with the § 3553(a) factors" when the defendant "ha[d] served just over half of his sentence."); United States v. Shayota, No. 1:15-cr-00264-LHK-1, 2020 WL 2733993, at *6 (N.D. Cal. May 26, 2020) ("'The length of the sentence remaining is an additional factor to consider in any compassionate release analysis,' with a longer remaining sentence weighing against granting any such motion.") (quoting United States v. Connell, No. 18-cr-00281-RS-1, 2020 WL 2315858, at *6 (N.D. Cal. May 8, 2020).

With respect to the need for the sentence imposed to provide educational or vocational training, medical care, or other correctional treatment, this factor also weighs in favor of denying the Motion.  Defendant's medical records demonstrate he has received adequate medical care while at USP-Marion and he has benefitted from educational and vocational training classes there.

The Court acknowledges Defendant's serious health conditions and his risk of developing severe symptoms if he becomes infected with COVID-19.  USP-Marion has protected Defendant from contracting the virus thus far.  Defendant has been in quarantine since July 16, 2020.  (See LeClair Decl. ¶ 4.)  He has been tested for the virus on four occasions.  (Id.)  It appears approximately 13.5% of the inmate population at USP-Marion has contracted the virus – 142 inmates of the 1,050 housed there – since the outbreak at the facility began in July and the number of active cases has decreased over the last few weeks.  The Court concludes USP-Marion has implemented significant and effective measures to curtail and contain the spread of the virus among its inmate population and staff.  (See id. at ¶¶ 5-9, Exh. B-G.)

Accordingly, the relevant § 3553(a) factors weigh in favor of denying the Motion.

Finally, the Court considers whether Defendant poses a danger to the safety of any other person or the community.[2]  See U.S.S.G. § 1B1.13(2).  The Court appreciates Defendant's letter

---

[2] The Government makes several arguments why, if released from custody, Defendant would not abide by the COVID-19 public health guidelines and directives.  As the Court

submitted with the Reply and his explanation of his rehabilitation as well as the letters submitted by his family members and friends in support of the Motion.  The Court commends Defendant's strides toward rehabilitation, including the completion of his GED.  Based on the record before the Court, however, Defendant has not met his burden to demonstrate he does not pose a danger to the safety of any other person or the community.  The record shows as follows.  Defendant's lengthy criminal history includes several violations of the conditions of his parole as well as repeated instances of flight from law enforcement officers.  Defendant violated the conditions of his pretrial release in this case.  As stated supra, the nature and circumstances of Defendant's underlying offense were serious and Defendant played a key role in the drug trafficking conspiracy.  Defendant has received several disciplinary infractions while in BOP custody.  Defendant received a "high risk recidivism" designation from the Department of Justice's Prisoner Assessment Tool Targeting Estimated Risk and Needs system.  (See Opp'n at 19, Exh. F; LeClair Decl. ¶ 4(c).)  Finally, the BOP has placed Defendant in a medium security classification.  (See LeClair Decl. ¶ 4, Exh. A.)  For these reasons, the Court cannot conclude Defendant does not pose a danger to the safety of any other person or the community.

Accordingly, although Defendant met his burden to show he suffers from a qualifying medical condition, the relevant 18 U.S.C. § 3553(a) factors weigh against reducing his sentence and Defendant has not met his burden to show he does not pose a danger to any other person or the community.

### IV. Conclusion

For the foregoing reasons, the Court DENIES Defendant's Motion for Compassionate Release Under 18 U.S.C. § 3582(c)(1)(A).

**IT IS SO ORDERED.**

---

relies on other grounds to evaluate Defendant's dangerousness, the Court does not address these arguments.